### SOUTHERN CALIFORNIA RY. CO. v. RUTHERFORD et al.

(Circuit Court, S. D. California. June 30, 1894.)

INJUNCTION—PERFORMANCE OF DUTY BY EMPLOYES.

Where employés of a railroad company, though remaining in its employment, refuse to perform their duties of operating its trains so long as Pullman cars are hauled, though the company is bound by contract to carry them, thus interrupting interstate commerce and the transmission of mails, and subjecting the company to suits and great and irreparable damage, injunction will issue requiring them to perform their duties during their continuance in the company's employment.

Suit by the Southern California Railway Company, a corporation of the state of California, against C. C. Rutherford and others for injunction.

W. J. Hunsaker, for complainant.

ROSS, District Judge. Time does not admit of an extended statement of the facts of the case or of the reasons for awarding the injunction applied for. The bill shows, among other things, that the complainant railway company is one link in a through line of road extending from National City, San Diego county, Cal., to the city of Chicago, in the state of Illinois, engaged in the transportation, among other things, of interstate commerce and the mails of the United States; its connecting roads being the Atlantic & Pacific and the Atchison, Topeka & Santa Fé Railroad Companies. That there is a valid existing contract between the complainant company and its connecting companies and the Pullman Palace Car Company by which all regular passenger trains running over the said through line of road, including that of the complainant, carrying the mail and passengers, shall carry Pullman cars. That the defendants are in the employ of the complainant company, and were employed by it to, among other things, handle and operate its trains so engaged in carrying the United States mail and passengers and freight between National City, Cal., and Chicago, Ill., and to and from intermediate points, and from the time of their employment up to the time of the commission of the acts complained of by the complainant were duly accustomed to handle and operate such trains, including Pullman cars. That subsequently the defendants, although remaining in the employment of the complainant company, refused, and still refuse, to handle or operate any train of cars of the complainant company to which a Pullman car is attached; and because of the discharge by the receivers in pos-

session and control of the Atchison, Topeka & Santa Fé Railroad Company of certain employés of theirs for refusing to handle or operate any train of that road to which a Pullman car is attached, the defendants to the present bill, while remaining in the employment of the complainant company, refused, and still refuse, to handle or operate any of the trains of the complainant company engaged in carrying the mail of the United States and in the aforesaid interstate commerce, which their regular and accustomed duties as such employés required, and still require, them to operate and handle. Undoubtedly, in the absence of a valid existing contract obligating the defendants to remain in the employment of the complainant company, they would ordinarily have the legal right to quit the employment and cease work at any time. But the bill alleges that the defendants continue in the employment of the complainant company, and yet refuse to perform their regular and accustomed duties as such employés; and it further shows that such refusal subjects and will continue to subject the complainant to a multiplicity of suits and to great and irreparable damage, in that there is an existing valid contract requiring complainant to attach a Pullman car or cars on all of its through trains for the carriage of passengers and the mail, and also retards and interrupts the complainant in the transmission of the United States mail and the interstate commerce aforesaid.

It is manifest that for this state of affairs the law—neither civil nor criminal—affords an adequate remedy. But the proud boast of equity is, "Ubi jus, ibi remedium." It is the maxim which forms the root of all equitable decisions. Why should not men who remain in the employment of another perform the duties they contract and engage to perform? It is certainly just and right that they should do so, or else quit the employment. And where the direct result of such refusal works irreparable damage to the employer, and at the same time interferes with the transmission of the mail and with commerce between the states, equity, I think, will compel them to perform the duties pertaining to the employment so long as they continue in it. If I unlawfully obstruct by a dam a stream of flowing water, equity, at the suit of the party injured, will compel me by injunction, mandatory in character, to remove the dam, and, prohibitory in character, from further interfering with the flow of the stream; and if I unlawfully erect a wall shutting out the light from another, equity will compel me to tear it down, and to refrain from further interference with the other's rights. It is true that such cases are not precisely like the present one, yet the principle upon which the court proceeds in such cases is not substantially different. And if it be said that there is no exact precedent for the awarding of an injunction in the present case, I respond, in the language of the court in the case of Toledo, etc., Ry. Co. v. Pennsylvania Co., 54 Fed. 751:

"Every just order or rule known to equity courts was born of some emergency, to meet some new conditions, and was therefore, in its time, without precedent. If based on sound principles, and beneficent results follow their enforcement, affording necessary relief to the one party without imposing

illegal burdens on the other, new remedies and unprecedented orders are not unwelcome aids to the chancellor to meet the constant and varying demands for equitable relief."

Moreover, the rights of the public in a case of this sort should be considered. "Railroads," said the supreme court in the case of Joy v. St. Louis, 138 U. S. 50, 11 Sup. Ct. 243, "are common carriers, and owe duties to the public. The rights of the public in respect to these great highways of communication should be fostered by the courts; and it is one of the most useful functions of a court of equity that its methods of procedure are capable of being made such as to accommodate themselves to the development of the interests of the public, in the progress of trade and traffic, by new methods of intercourse and transportation."

For the reasons thus hastily and briefly stated, I shall award an injunction requiring the defendants to perform all of their regular and accustomed duties so long as they remain in the employment of the complainant company, which injunction, it may be as well to state, will be strictly and rigidly enforced.